**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| KI BURKE, on behalf of herself, all others similarly situated, and the general public,<br><br>        Plaintiff,<br><br>        Vs.<br><br>MG WELLINGTON, LLC, d/b/a KIDFRESH,<br><br>        Defendant. | |

**Case No. 1:16-cv-02968 WHP**

**DEFENDANT'S MOTION TO DISMISS UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6)**

# TABLE OF CONTENTS

I.     INTRODUCTION ........................................................................................ 1

II.    FACTUAL ALLEGATIONS IN THE COMPLAINT RELEVANT TO PLAINTIFF'S
       INDIVIDUAL CLAIMS .............................................................................. 1

III.   LEGAL STANDARD ................................................................................. 8

IV.    DISCUSSION ............................................................................................. 9

       A.    A Reasonable Consumer Would Not Be Misled By The Statements Plaintiff
             Alleges Misled Her ......................................................................... 9

       B.    Plaintiff's Claims Are Preempted Because She Is Seeking To Impose Labeling
             Requirements On Kidfresh That Differ From The Requirements Of 21 U.S.C.
             Section 343(r) And The Regulations Promulgated Pursuant To It ..................... 13

       C.    Many Of Plaintiff's Claims Fail Because They Are Premised On Non-Actionable
             Puffery................................................................................................. 17

       D.    Plaintiff Cannot Bring Claims Under New York General Business Law  Sections
             349 Or 350 Given None Of Her Alleged Interactions With Kidfresh Or The
             Challenged Products Involved New York ............................................ 19

       E.    Plaintiff's Breach Of Express Warranty Claims Fail Because She Has Not
             Alleged That Any Of Kidfresh's Affirmative Representations On The Challenged
             Products' Labeling Were False.............................................................. 21

       F.    Plaintiff's Breach Of The Implied Warranty Of Merchantability Claim Fails As A
             Matter Of Law Because The Warranty Is Inapplicable As To Kidfresh, And, Even
             If It Was, Kidfresh Is Not Alleged To Have Breached It ...................................... 22

       G.    Plaintiff's Equitable Unjust Enrichment And Restitution Causes Of Action Fail
             Because They Are Derivative Of Her Other Non-Plausible Claims, And Are
             Improperly Duplicative To Boot........................................................... 23

V.     CONCLUSION ......................................................................................... 24

# TABLE OF AUTHORITIES

<u>Federal Cases</u>

*Anderson v. Bungee Int'l Mfg. Corp.*,
44 F. Supp. 2d 534 (S.D. N.Y. 1999) ..................................................................................... 18

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ....................................................................................................... 8, 9

*Bates v. Dow Agrosciences, L.L.C.*,
544 U.S. 431 (2005) .......................................................................................................... 13

*Beautiful Home Textiles (USA), Inc. v. Burlington Coat Factory Warehouse Corp.*,
2014 WL 4054240 (S.D. N.Y. Aug. 15, 2014) ...................................................................... 23

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ....................................................................................................... 8, 9

*Cruz v. Anheuser-Busch*,
2015 WL 3561536 (C.D. Cal. June 3, 2015) ................................................................. 11, 21

*Cruz v. FXDirectDealer, LLC*,
720 F.3d 115 (2d. Cir. 2013) ...................................................................................... 19, 20

*Del Greco v. CVS Corp.*,
337 F. Supp. 2d 475 (S.D. N.Y. 2004) .................................................................................. 23

*Dvora v. General Mills, Inc.*,
2010 WL 1897349 (C.D. Cal. May 16, 2011) ................................................................ 2, 15

*Fink v. Time Warner Cable*,
714 F.3d 739 (2d. Cir. 2013) ........................................................................................ 9, 10

*Fisher v. Monster Beverage Corp.*,
2013 WL 4804385 (C.D. Cal. July 9, 2013) .................................................................. 17, 18

*Hariston v. S. Beach Beverage Co.*,
2012 WL 1893818 (C.D. Cal. May 18, 2012) ........................................................................ 11

*In re PepsiCo, Inc., Bottled Water Mktg. & Sales Practices*,
588 F. Supp. 2d 527 (S.D. N.Y. 2008) ............................................................................ 13, 14

*In re Whole Foods Market, Inc.*,
-- F. Supp. 3d -- , 2016 WL 631532 (W.D. Tex. Feb. 16, 2016) ............................................ 13

i

*Lateef v. Pharmavite LLC*,
   2012 WL 5269619 (N.D. Ill. 2012) ........................................................................ 2

*McKinnis v. General Mills, Inc.*,
   2007 WL 4762172 (C.D. Cal. Sept. 18, 2007) ........................................................ 12

*McKinnis v. Sunny Delight Beverages Co.*,
   2007 WL 4766525 (C.D. Cal. Sept. 4, 2007) ................................................... 12, 23

*Mouzon v. Radiancy, Inc.*,
   85 F. Supp. 3d 361 (D.D.C. 2015) ........................................................................ 20

*Nemphos v. Nestle Waters N. Am., Inc.*,
   775 F.3d 616 (4th Cir. 2015) ................................................................................ 13

*New York Rest. Ass'n v. New York City Bd. of Health*,
   556 F.3d 114 (2d. Cir. 2009) ................................................................................. 13

*Parent v. MillerCoors LLC*,
   2015 WL 6455752 (S.D. Cal. Oct. 26, 2015) ........................................................ 18

*Pelayo v. Nestle USA, Inc.*,
   989 F. Supp. 2d 973 (C.D. Cal. 2013) .................................................................. 11

*Serrano v. Cablevision Sys. Corp.*,
   863 F. Supp. 2d 157 (E.D.N.Y. 2012) .................................................................. 18

*Time Warner Cable Inc. v. DIRECTV, Inc.*,
   497 F. 3d. 144 (2d Cir. 2007) ............................................................................... 17

*Viggiano v. Hansen Nat'l Corp.*,
   944 F. Supp. 2d 877 (C.D. Cal. 2013) ........................................... 18, 21, 22, 23

<u>State Cases</u>

*All West Elecs., Inc. v. M-B-W, Inc.*,
   64 Cal. App. 4th 717 (1998) ................................................................................ 22

*Burr v. Sherwin Williams Co.*,
   42 Cal. 2d 682 (1954) ........................................................................................... 22

*Corsello v. Verizon New York, Inc.*,
   18 N.Y.3d 777 (2012) ............................................................................................ 23

*Gomez-Jimenez v. New York Law School*,
   956 N.Y.S.2d 54 (2012) ........................................................................................ 10

*Goshen v. Mutaul Life Ins. Co. of N.Y.*,
   98 N.Y.2d 314 (2002) .......................................................................................... 19, 20

*Hauter v. Zogarts*,
   14 Cal. 3d 104 (1975) ................................................................................................. 22

*Mocek v. Alfa Leisure, Inc.*,
   114 Cal. App. 4th 402 (2003) .................................................................................... 22

*Simpson v. Kroger Corp.*,
   219 Cal. App. 4th 1352 ............................................................................................... 11

## Federal Statutes

21 U.S.C. Section 341 ..................................................................................................... 17

21 U.S.C. Section 343 ..................................................................................................... 17

21 U.S.C. Section 343(r) ...................................................................................... 15, 16, 17

21 U.S.C. Section 343(r)(1) ................................................................... 16, 17, 18, 19, 20

21 U.S.C. Section 343(r)(1)(A) ..................................................................................... 16

21 U.S.C. Section 343(r)(2)(A)(iii) ............................................................................... 17

21 U.S.C. Section 343(r)(2)(A)(iv) ............................................................................... 17

21 U.S.C. Section 343(r)(2)(A)(v) ................................................................................ 17

21 U.S.C. Section 343(r)(5)(B) ..................................................................................... 16

21 U.S.C. Section 343-1(a)(5) ......................................................................... 16, 17, 19

## State Statutes

Cal. Com. Code Section 2313(1) .................................................................................. 24

Cal. Com. Code Section 2313(1)(b) ............................................................................. 24

Cal. Com. Code Section 2314(1) .................................................................................. 25

N.Y. Gen. Bus. Law Section 349 ........................................................................ 22, 23, 24

N.Y. Gen. Bus. Law Section 349(a) .............................................................................. 22

N.Y. Gen. Bus. Law Section 350 ........................................................................... 22, 23, 24

### Federal Rules

Fed. Rule of Civil Proc. 12(B)(6) ...................................................................................... 1

### Federal Regulations

21 C.F.R. Section 100.1(c)(4) ........................................................................................ 17

21 C.F.R. Section 101.54(d) .......................................................................................... 17

21 C.F.R. Section 101.56(b) .......................................................................................... 17

21 C.F.R. Section 101.56(c) .......................................................................................... 17

21 C.F.R. Section 101.56(d) .......................................................................................... 17

21 C.F.R. Section 101.62 .............................................................................................. 17

21 C.F.R. Section 101.65(c) .......................................................................................... 17

21 C.F.R. Section 101.65(d) ................................................................................ 17, 18, 19

21 C.F.R. Section 101.65(d)(1)(ii) ................................................................................ 18

21 C.F.R. Section 101.65(d)(2) ..................................................................................... 19

21 C.F.R. Section 101.67(a) .......................................................................................... 17

59 Fed. Reg. 24232 (May 10, 1994) .............................................................................. 19

## I.       INTRODUCTION

Plaintiff's claims lack merit for several reasons.  At root, though, they fail because it is implausible that a ***reasonable*** consumer would be misled into believing Kidfresh's products have a nutrition profile different than what is explicitly stated on the labeling because of generic statements like "[g]oodness for kids is what we are all about."  Therefore, as explained in detail below, the Court should dismiss this lawsuit with prejudice.

## II.      FACTUAL ALLEGATIONS IN THE COMPLAINT RELEVANT TO PLAINTIFF'S INDIVIDUAL CLAIMS

Plaintiff alleges she bought Kidfresh's "Muy Cheesy Quesadillas," "Mamma Mia Cheesy Pizza," "Super Duper Chicken Nuggets," and "Wagon Wheels Mac + Cheese" – the products on which her claims are based – on numerous occasions from 2012 through December 2015. (Compl., ¶¶ 142-148.)  Relevant here, the only place where Plaintiff bought these products was in California at various Whole Foods and Target stores.  (*Id.*, ¶¶ 143-144.)

According to Plaintiff, the challenged Kidfresh products are unhealthy due to their total fat and saturated fat content.  (*See*, *e.g.*, *id.*, ¶¶ 59-64 (claiming the Kidfresh Mac + Cheese is "unhealthy due to its high total and saturated fat content"), ¶¶ 67-74 (claiming the Kidfresh Mamma Mia Cheesy Pizza is "unhealthy due to its high total and saturated fat content"), ¶¶ 77-84 (claiming the Kidfresh Super Duper Chicken Nuggets product is "unhealthy due to its high total and saturated fat content"), and ¶¶ 87-93 (claiming the Kidfresh Muy Cheesy Quesadillas product is "unhealthy due to its high total and saturated fat content").)  However, Plaintiff does not allege that the total or saturated fat content is stated inaccurately on the product labeling. (*See id., ¶¶* 40-44.)  In fact, Plaintiff's contention that these products are unhealthy is premised on the accuracy of that information.  (*See id.*)

1

Although Plaintiff acknowledges that the fat information provided on Kidfresh's challenged products is accurate, she claims she was misled nonetheless about how healthy these products are given their total and saturated fat content because of several statements on the labeling of the challenged products. (*Id.*, ¶¶ 145-148.)[1] Specifically, Plaintiff alleges the statements quoted below misled her into believing Kidfresh's challenged products were not as healthy as she otherwise thought because of their total fat and saturated fat content.

First off, Plaintiff claims the below statements – which are on the labeling of every product she is challenging – misled her (these statements can be reviewed on the packaging being challenged at paragraphs 58, 66, 76, and 86 of the Complaint):

- "Goodness for kids is what we are all about." (*Id.*, ¶¶ 145.a., 146.a., 147a., and 148.a.)

- "At Kidfresh, we are just like you:  we want to have kids' meals without all these artificial ingredients that you can't even pronounce!  As a dad, I made it my mission to create more options for healthy and easy kids' meals – ones that children love to eat and parents can trust.  So, with our chef and nutritionist, we created Kidfresh, a healthy twist on kids' favorite foods, simply prepared with real and natural ingredients, vegetables, grains and proteins." (*Id.*, ¶¶ 145.b., 146.b., 147.b., and 148.b.)

- "The one thing we're sneaky about?  Vegetables." (*Id.*, ¶¶ 145.h., 146.g., 147.i., and 148.e.)

---

[1] Although the Complaint (misleadingly) discusses Kidfresh's marketing online, Plaintiff does not allege she ever relied on – or even saw – any of that marketing.  Rather, the only Kidfresh statements she alleges misled her were those on the packaging of the challenged products.  (*See* Compl., ¶¶ 142-148.)  Therefore, on this motion, the only statements for which she could have standing to challenge are those identified on the product labeling she alleges she reviewed and purportedly was misled by.  *See Lateef v. Pharmavite LLC*, 2012 WL 5269619, *3-*4 (N.D. Ill. 2012) (finding plaintiff did not have standing to challenge representations allegedly made on the defendant's website because "[s]he makes no allegation that she visited the website, knew that it existed, or was aware of the statements on it"); *see also Dvora v. General Mills, Inc.*, 2011 WL 1897349, *8 (C.D. Cal. May 16, 2011) ("[t]o the extent that Plaintiff appears to argue that he might have standing with respect to claims based on statements he did not rely on, Plaintiff is wrong").

- "Freezing is one of the best ways to preserve nutrients and flavors while extending the shelf life of food.  That's why Kidfresh meals are frozen immediately after being cooked, so that they keep all the good stuff for a long time!"  (*Id.*, ¶¶ 145.j., 146.i., 147.k., and 148.f.)

Although Plaintiff claims the above statements are misleading, she does not allege that the actual facts stated in the above statements are false; specifically, she has not alleged that: (1) Kidfresh's products do have artificial ingredients; (2) Kidfresh's products do not have real and natural ingredients, vegetables, grains and proteins; (3) freezing food does not extend its shelf life; or (4) Kidfresh meals are not frozen immediately after being cooked.  Moreover, the remaining statements are not statements of fact but rather merely statements of opinion or of subjective intention.  Further, not one of these statements even references fat one way or the other.

With respect to Kidfresh's Muy Cheesy Quesadillas, Plaintiff claims the following statements misled her (all of which are shown on the product labeling at paragraph 86 of the Complaint):

- "Our **Muy Cheesy Quesadillas**, for example, are prepared with wheat tortillas that are filled with real cheddar and Monterey jack cheeses.  Muy Cheesy!  **Psst . . . we even added pureed vegetables into the cheese sauce.**  The kids will love it!  Also, we carefully select and **use only natural and Non-GMO ingredients for our products.**  On top of that, we work with accredited third-party labs to ensure that our stringent quality standards are met."  (*Id.*, ¶ 145.c.)

- "Simply Nutritious . . . Hidden Vegetables, Excellent Source of Protein + Vitamin A, Good Source of Calcium + Iron, 0 g Trans Fat, No Artificial Flavors or Colors, No Preservatives."  (*Id.*, ¶ 145.d. (emphasis in quote).)

- "Made with real ingredients . . . Wheat Tortillas, Cheese, Carrots, Non-GMO Ingredients."  (*Id.*, ¶ 145.e.)

- "PACKED WITH GOODNESS," "WITH HIDDEN VEGGIES!" "Filled with real cheddar and Monterey Jack + hidden vegetables," "ALL NATURAL," and "Excellent Source of Protein."  (*Id.*, ¶ 145.f.)

- "Whole Grain 11 grams per serving" and "WholeGrainsCouncil.org."  (*Id.*, ¶ 145.g.)

- "Fresh-Frozen Goodness."  (*Id.*, ¶ 145.i.)

Again, although Plaintiff claims the above statements are misleading, she does not allege that any of the facts stated therein are false, *e.g.*, she has not alleged that (1) the quesadillas are not made with a wheat tortilla, carrots, and real cheddar and Monterey jack cheese; (2) the cheese sauce does not include pureed vegetables; (3) the product does not include only natural and non-GMO products; (4) the product does not include vegetables, protein, Vitamin A, calcium, iron, 0g Trans Fat, and no artificial flavors or preservatives; or (5) the product does not include 11 grams of whole grain per serving.  Moreover, as a review of these statements shows, the remaining statements are not statements of fact but rather merely statements of opinion or of subjective intention.  Further, the *only* reference to fat in the above statements is that the quesadillas contain 0 grams of trans fat – a fact Plaintiff does not contend is inaccurate.

With respect to Kidfresh's Mamma Mia Pizza, Plaintiff claims the following statements misled her (all of which are shown on the product labeling at paragraph 66 of the Complaint):

- "Our Mamma Mia Cheesy Pizza, for example, is prepared with a brick oven baked whole grain crust, and stringy cheese.  Mamma Mia yummy!  Psst . . . we even added pureed vegetables into the tomato sauce.  The kids will love it!  Also, we carefully select and use only natural and Non-GMO ingredients for our products.  On top of that, we work with accredited third-party labs to ensure that our stringent quality standards are met."  (*Id.*, ¶ 146.c.)

- "Simply Nutritious . . . 40 Grams Vegetables per Serving, Excellent Source of Protein + Calcium, 30% Less Sodium than the Leading Frozen Pizza Brand, 22 Grams Whole Grain per Serving, Good Source of Vitamin A + Iron, 0g Trans Fats, No Artificial Flavors, Colors or Preservatives," and "Made with real ingredients . . . RBST-Free Mozzarella Cheese, Brick Oven Baked Whole Grain Crust, All Natural Tomato Sauce, Hidden Pumpkin Puree, Non-GMO Ingredients."  (*Id.*, ¶ 146.d.)

- "PACKED WITH GOODNESS," "EXCELLENT SOURCE OF PROTEIN," "EXCELLENT SOURCE OF CALCIUM," "Brick Oven Baked Whole Grain Crust, Stringy Cheese, Tomato Sauce + Hidden Vegetables," "ALL NATURAL," "40g Vegetables per Serving," "22 g Whole Grain per serving," "Excellent Source of Calcium," and "30% Less Sodium than the leading brand."  (*Id.*, ¶ 146.e.)

- "Whole Grain 22 grams per serving" "WholeGrainsCouncil.org."  (*Id.*, ¶ 146.f.)

- "Fresh-Frozen Goodness."  (*Id.*, ¶ 146.h.)

Once more, although Plaintiff claims the above statements are misleading, she does not allege that any of the facts stated therein are false, *e.g.,* she has not alleged that (1) the pizza is not made with whole grain crust, RBST-Free mozzarella cheese, tomato sauce with pureed pumpkin, natural and non-GMO ingredients, and does not include artificial flavors, colors, or

preservatives; or (2) the pizza does not have 40 grams of vegetables per serving, protein, calcium, 30-percent less sodium than the leading frozen pizza brand, 22 grams of whole grain per serving, Vitamin A, Iron, or 0g Trans Fats.  Further, as a review of these statements shows, the remaining statements are not statements of fact but rather merely statements of opinion or of subjective intention.   Also, as with the quesadillas, the *only* reference to fat in the above statements is that the pizza contains 0 grams of trans fat – a fact Plaintiff does not contend is inaccurate.

With respect to Kidfresh's Super Duper Chicken Nuggets, Plaintiff claims the following statements misled her too (all of which are shown on the product labeling at paragraph 76 of the Complaint):

- "Our Super Duper Chicken Nuggets, for example, are prepared with whole grain breading for a crisp, golden outside and deliciously tender white meat chicken on the inside.  Psst . . . we even added pureed vegetables into our chicken nuggets which make them Super Duper.  The kids will love it!"  (*Id.*, ¶ 147.c.)

- "Simply Nutritious . . . Excellent Source of Protein, 11g Whole Grain per Serving, Pureed Veggies, 40% Less Sodium than the Leading Brand of Breaded Chicken Nuggets, 73% Less Fat than the Leading Brand of Breaded Chicken Nuggets."  (*Id.*, ¶ 147.d.)

- "Made with real ingredients . . . Chicken Humanely Raised without Antibiotics, Whole Grain Breading, Cauliflower, Onions."  (*Id.*, ¶ 147.e.)

- "PACKED WITH GOODNESS," "EXCELLENT SOURCE OF PROTEIN," "Made with White Meat Chicken Patties + Pureed Vegetables, in a Whole Grain Breading," "ALL NATURAL," "11g Whole Grain per Serving," "40% Less Sodium [and] 73% Less Fat than the leading brand of breaded chicken nuggets."  (*Id.*, ¶ 147.f.)

- "Sodium content reduced from 417mg to 250 mg [and] the fat content reduced from 15g to 4g per serving."  (*Id.*, ¶ 147.g.)

- "Whole Grain 11 grams per serving."  (*Id.*, ¶ 147.h.)

- "Fresh-Frozen Goodness."  (*Id.*, ¶ 147.j.)

As with the quesadillas and pizza, although Plaintiff claims the above statements are misleading, she does not allege that any of the facts stated therein are false, *e.g.*, she has not alleged that (1) the chicken nuggets are not made with antibiotic-free chicken, whole grain breading, cauliflower, onions, and pureed vegetables; or (2) the chicken nuggets do not include protein, 11g of whole grain per serving, 40 percent less sodium and 73 percent less fat compared to the leading brand of chicken nuggets per serving, 250 mg of sodium per serving, and 4g of fat per serving.  Once again, a review of these statements shows that the remaining statements are not statements of fact but rather merely statements of opinion or of subjective intention.  Further, the *only* references to fat in the above statements are (1) a comparison between the fat content in this product against the leading brand; and (2) an explicit statement noting there are 4 grams of fat in Kidfresh's chicken nuggets.  Plaintiff does not contend that either statement is inaccurate.

Finally, with respect to Kidfresh's Wagon Wheels Mac + Cheese, Plaintiff claims the following statements misled her (all of which are shown on the product labeling at paragraph 58 of the Complaint):

- "Our **Wagon Wheels Mac & Cheese**, for example, is made with real grated cheddar + stringy mozzarella cheese!  **Psst . . . we even added pureed carrots into the cheese sauce.**  Don't worry, they won't even notice, they'll love it!  Also, we carefully select and **use only natural and non-GMO ingredients for our products**.  On top of that, we

work with accredited third-party labs to ensure that our stringent quality standards are met." (*Id.*, ¶ 148.c. (emphasis in quote).)

- "PACKED WITH GOODNESS," "EXCELLENT SOURCE OF PROTEIN," "EXCELLENT SOURCE OF CALCIUM AND VITAMIN A," "ALL NATURAL with Hidden Veggies," and "real grated cheddar + creamy cheese sauce with hidden vegetables." (*Id.*, ¶ 148.d.)

- "Simply Nutritious . . . Hidden Veggies, Excellent Source of Protein, Excellent Source of Calcium and Vitamin A, 0g Trans Fat, No Artificial Flavors, Colors or Preservatives." (*Id.*, ¶ 148.e.)

Like all of the other products, although Plaintiff claims the above statements are misleading, she does not allege that any of the facts stated therein are false, *e.g.*, she has not alleged that (1) the wagon wheels are not made with a cheese sauce with pureed vegetables, non-GMO ingredients, or cheddar cheese; (2) the wagon wheels do not include protein, calcium, Vitamin A, 0g Trans Fat; or (3) the wagon wheels do include artificial flavors, colors, or preservatives.  Further, like all of the above products and challenged statements, the remaining statements are not statements of fact, but rather are merely opinion or statements of subjective intention.  Finally, as with the quesadillas and pizza, the *only* reference to fat in the above statements is that the product contains 0 grams of trans fat – a fact Plaintiff does not contend is inaccurate.

## III.    LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to

draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Further, although courts must accept all factual allegations in a complaint as true, this rule "is inapplicable to legal conclusions." *See id* at 678-79. In other words, a claim that consists of "naked assertions devoid of further factual enhancement" does not suffice. *Id.* at 678 (internal quotation marks omitted). In deciding whether a claim is plausible, the Court is expected "to draw on its judicial experience and common sense." *Id.* at 679.

## IV.   DISCUSSION

### A.   A Reasonable Consumer Would Not Be Misled By The Statements Plaintiff Alleges Misled Her

Plaintiff has alleged consumer fraud claims under both New York and California law in her first seven causes of action. (*See*, *generally*, Compl., ¶¶ 173-231.) "To prevail on [ ] consumer fraud claims under New York and California law, [a plaintiff] must establish that [the defendant's] allegedly deceptive advertisements were likely to mislead a reasonable consumer acting reasonably under the circumstances." *Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d. Cir. 2013). Further, "[i]t is well settled that a court may determine as a matter of law that an allegedly deceptive advertisement would not have misled a reasonable consumer." *Id.* In analyzing allegedly deceptive advertising, the Second Circuit has stated that:

> [I]n determining whether a reasonable consumer would have been misled by a particular advertisement, context is crucial. For example, under certain circumstances, the presence of a disclaimer or similar clarifying language may defeat a claim of deception. [Moreover, a] plaintiff who alleges that he was deceived by an advertisement may not misquote or misleadingly excerpt the

language of the advertisement in his pleadings and expect his action to survive a

motion to dismiss or, indeed, to escape admonishment.

*Id.* at 742 (internal citations omitted).

Applying the above standard, it is clear that the statements Plaintiff alleges misled her

would not have misled a ***reasonable*** consumer regarding the nutrition profile of the challenged

products given their total and saturated fat content.  As an initial matter, there is no dispute that

everything directly said about fat and saturated fat on Kidfresh's challenged products is

completely accurate.  (*See* Compl., ¶¶ 40-44.)   In fact, Plaintiff not only admits that the

information regarding total and saturated fat is accurate, but, ironically enough, relies upon the

accuracy of that information to make her claims.  (*See id*.)  Moreover, of the kitchen sink's worth

of statements Plaintiff alleges misled her about the challenged products' total and saturated fat

content, only three even mention fat content:  (1) statements on some of the products noting they

have zero grams of trans fat; (2) statements on the chicken nuggets product comparing the

amount of fat in them to the leading brand; and (3) another statement on the chicken nuggets

noting that the product has 4 grams of fat.  (*See* Compl., ¶¶ 145.d., 146.d., 147.d., 147.f., 147.g.,

148.e.)  Plaintiff does not allege any of these statements are false, none even mention saturated

fat, and the one statement that mentions total fat accurately states the amount of total fat in the

product.  As such, it is implausible that a reasonable consumer would be misled regarding the

nutrition profile of the challenged products due to their total and saturated fat content when even

Plaintiff acknowledges everything said about fat on those products is accurate.  Indeed, the law is

clear that a defendant does not mislead a reasonable consumer "by simply publishing truthful

information and allowing consumers to make their own assumptions about the nature of the

information."  *See Gomez-Jimenez v. New York Law School*, 956 N.Y.S.2d 54, 58-59 (2012) (in

10

affirming dismissal of a New York General Business section 349 claim, finding reasonable consumer would not have been misled by defendant law school's advertising regarding its graduates' employment and salary data where data did not distinguish between full-time and part-time work and the salary information was based on a limited sampling even though court noted that the advertising by the law school was "unquestionably less than candid and incomplete").  Finally, other than these statements, none of the other statements identified by Plaintiff have anything to do with fat, but rather are either (1) generic and vague statements of opinion such as "goodness for kids is what we are all about," or (2) pertain to nutrients in the challenged products that are not fat and are not alleged to be inaccurate.  (*See*, *generally*, Compl., ¶¶ 145-148.)  Thus, given the actual statements about fat and saturated fat on the challenged products' labeling are undisputedly accurate, a reasonable consumer would not be misled regarding these products' fat and saturated fat content by statements that have nothing to do with either.  For these reasons, Plaintiff's consumer fraud claims should be dismissed.  *See*, *e.g.*, *Cruz v. Anheuser-Busch*, 2015 WL 3561536, *7-*9 (C.D. Cal. June 3, 2015) (holding that high-calorie "Bud Light Lime" product was not likely to mislead the reasonable consumer despite use of the word "light" on its packaging because the specific representations regarding calorie content were admitted to be accurate by the plaintiff); *Pelayo v. Nestle USA, Inc.*, 989 F. Supp. 2d 973, 978-80 (C.D. Cal. 2013) (finding that product labeling that used phrase "All Natural" despite allegedly having two artificial ingredients was not likely to mislead the reasonable consumer where there was not an agreed-upon definition for the phrase "all natural" and the ingredient list explicitly listed the two ingredients the plaintiff claimed were artificial); *Simpson v. Kroger Corp.*, 219 Cal. App. 4th 1352, 1370-78[2] (2013) (finding that a product that included both butter and canola or olive oil but that was titled "Challenge Butter" would not mislead a reasonable consumer into

---

[2] Pages 1373-78 cited above are only appendixes with pictures.

believing that the product only included butter when the fact that the product contained these oils was noted on the product labeling and in the ingredient list); *Hariston v. S. Beach Beverage Co.*, 2012 WL 1893818, *4-*5 (C.D. Cal. May 18, 2012) (finding a reasonable consumer would not be misled into believing that vitamins were not added by artificial or synthetic ingredients where the label stated "all natural with vitamins" because, when viewed in full context, "no reasonable consumer would read the 'all natural' language as modifying the 'with vitamins' language and believe that the added vitamins are suppose[d] to be 'all natural vitamins'"); *Dvora v. General Mills, Inc.*, 2010 WL 1897349, *1, *8 (C.D. Cal. May 16, 2011) (finding that reasonable consumer would not be misled into believing cereal had fruit in it despite the fact that the label depicted pictures of fruit on it with the words 'BLUEBERRY' and 'POMEGRANATE' prominently displaced because the labeling included the qualifying statement "fruit flavored clusters"); *McKinnis v. Sunny Delight Beverages Co.*, 2007 WL 4766525, *3-*5 (C.D. Cal. Sept. 4, 2007) (finding a reasonable consumer would not be misled by defendant's products that used names that utilized fruits, pictures that prominently displayed fruits, and that were oftentimes displayed next to other real fruit juices even though the product only contained approximately 2 percentage fruit juice because the label does not explicitly refer to the product as a "fruit juice," and the back of the label identifies that water and corn syrup are the most prominent ingredients, as well as the specific amount of fruit juice in it); *McKinnis v. General Mills, Inc.*, 2007 WL 4762172, *3-*5 (C.D. Cal. Sept. 18, 2007) (finding a reasonable consumer would not be misled into believing products "Berry Berry Kix, Trix Cereal, Fruity Cheerios, Trix Yogurt (Strawberry Kiwi), and Yoplait Go-Gurt Yogurt (Strawberry Splash)" contained real fruit despite pictures of fruits and berries on their packaging and their names given the ingredient list did not include fruit).

**B.**    **Plaintiff's Claims Are Preempted Because She Is Seeking To Impose Labeling Requirements On Kidfresh That Differ From The Requirements Of 21 U.S.C. Section 343(r) And The Regulations Promulgated Pursuant To It**

Although Plaintiff's claims all arise under state law, her Complaint devotes significant space to alleging Kidfresh's products violate the Federal Food, Drug, and Cosmetic Act ("FDCA") – specifically 21 U.S.C. Section 343(r)(1)(A) and regulations promulgated thereunder.[3] (*See*, *generally*, Compl., ¶¶ 113-141; *see also id.*, ¶ 120 ("Kidfresh's high-fat products are misbranded because their labels claim that the products are healthy, but do not meet the requirements for making such health claims. *See* 21 U.S.C. § 343(r)(1)(A)".) Plaintiff has done so because her claims are expressly preempted to the extent they are premised on requirements not imposed by 21 U.S.C. Section 343(r)(1) and the regulations promulgated thereunder. As explained below, despite Plaintiff's best efforts to avoid preemption under the FDCA, she cannot do so.

In 1990, Congress added the Nutrition Labeling and Education Act ("NLEA") to the FDCA in order to "create uniform national standards regarding the labeling of food." *See In re Whole Foods Market, Inc.*, -- F. Supp. 3d -- , 2016 WL 631532, *4 (W.D. Tex. Feb. 16, 2016) (internal quotation marks omitted). Toward that end, and as relevant here, the NLEA includes a provision that expressly preempts any state or local entity from imposing "any requirement respecting any claim of the type described in [21 U.S.C. Section] 343(r)(1) of this title" except for food served in restaurants. *See* 21 U.S.C. § 343-1(a)(5); *see also* 21 U.S.C. § 343(r)(5)(B) (addressing food served in restaurants). This express preemption provision "'reaches beyond positive enactments like statues and regulations, to embrace common-law duties and judge-made

---

[3] Section 343(r) "addresses *voluntary* information, that is, those claims that a food purveyor may *choose* to add to its product label about the nutrient content (for example, 'low sodium') or health benefits (for example, 'fiber reduces cholesterol') of its product." *New York Rest. Ass'n v. New York City Bd. of Health*, 556 F.3d 114, 119 (2d. Cir. 2009).

rules'" under state law as well.  *See In re PepsiCo, Inc., Bottled Water Mktg. & Sales Practices*, 588 F. Supp. 2d 527, 532 (S.D. N.Y. 2008) (quoting *Bates v. Dow Agrosciences, L.L.C.*, 544 U.S. 431, 443 (2005)); *see also Nemphos v. Nestle Waters N. Am., Inc.*, 775 F.3d 616, 624 (4th Cir. 2015) ("[t]he term 'requirement' in the NLEA's preemption provisions must be read broadly . . . [to] include[ ] statutes, regulations, standards, and other obligations arising from state law"). Moreover, under the NLEA, "not identical to" means any requirements "concerning the labeling of food . . . [that] (i) [a]re not imposed by or contained in the applicable provision (including implementing regulation) of section 401 or 403 of the act [*i.e.* 21 U.S.C. §§ 341 or 343]; or (ii) [d]iffer from those specifically imposed by or contained in the applicable provision (including any implementing regulation) of section 401 or 403 of the act [*i.e.* 21 U.S.C. §§ 341 or 343]."  21 C.F.R. § 100.1(c)(4).

Relevant here, Section 343(r)(1) and regulations promulgated thereunder provide a comprehensive set of rules regarding what statements are required, permissible, and disallowed given a food product's given fat content.  *See*, *generally*, 21 U.S.C. § 343(r)(2)(A)(iii), (iv), and (v); 21 C.F.R. §§ 101.54(d), 101.56(b)-(e), 101.62, 101.65(c) and (d), 101.67(a).  Although Plaintiff's Complaint alleges several statements are actionably misleading (detailed above in Section II), she only alleges two of these statements violate Section 343(r)(1) and the regulations promulgated thereunder:  (1) the statement on the challenged products' labeling stating "**healthy and easy kids' meals**" and (2) the statement on the challenged products' labeling stating "**a healthy twist on kids' favorite foods**, simply prepared with real and natural ingredients, vegetables, grains and proteins."  (*See* Compl. ¶¶ 121, 145.b., 146.b., 147.b., and148.b.)

As an initial matter, Kidfresh notes that because Plaintiff has not alleged – nor could she in good faith – that any of the other statements detailed above in Section II violate Section

343(r)(1), her claims premised on all of these other statements are preempted because allowing them to go forward would result in imposing product labeling requirements on Kidfresh not identical to those required by Section 343(r).  *See* 21 U.S.C. § 343-1(a)(5); *see also In re PepsiCo*, 588 F. Supp. 2d at 538-39 (in addressing NLEA preemption's scope, stating "[w]here federal requirements address the subject matter that is being challenged through state law claims, such state law claims are preempted to the extent they do not impose identical requirements" because to hold otherwise would result in states being able to impose "requirements that go beyond federal law as long as federal law does not expressly prohibit or permit the specific labeling at issue").

With respect to the two statements Plaintiff alleges do violate Section 343(r)(1) and regulations promulgated thereunder, they actually are part of the same statement Kidfresh's founder wrote on the challenged products' packaging to explain his motivation for starting the company generally.  Because it is helpful to review that statement in full, Kidfresh quotes it once more below:

> At Kidfresh, we are just like you:  we want to have kids' meals without all these artificial ingredients that you can't even pronounce!  As a dad, I made it my mission to create more options for healthy and easy kids' meals – ones that children love to eat and parents can trust.  So, with our chef and nutritionist, we created Kidfresh, a healthy twist on kids' favorite foods, simply prepared with real and natural ingredients, vegetables, grains and proteins.

(Compl., ¶¶ 145.b., 146.b., 147.b., and 148.b.)

Plaintiff's claim that this statement violates Section 343(r)(1) is premised on her contention that the use of the word "healthy" violates 21 C.F.R. Section 101.65(d).  (*Id.*, ¶¶ 121-

141.)  Under Section 101.65(d), food must have a certain nutrient profile if the word "healthy" is used to make a "nutrient claim" – which is defined as being a claim "made in connection with an explicit or implicit claim or statement about a nutrient (*e.g.* 'healthy, contains 3 grams of fat')." *See* 21 C.F.R. § 101.65(d)(1)(ii).  However, as the Food and Drug Administration ("FDA") itself has explained, the use of the word "healthy" on food product labeling in and of itself does not require that a food product meet the nutrient profile set forth in Section 101.65(d)(2) *unless* the word "healthy" is accompanied by additional language, graphic material, or is otherwise presented to suggest that the food has a particular nutrient profile.  *See* 59 Fed. Reg. 24232, 24235 (May 10, 1994).  In fact, even when the word "healthy" is used on labeling for general dietary guidance – *e.g.* in the phrase "eat lots of fruits and vegetables for a healthy diet" – it is not being used to make an implied nutrient claim.  *Id.* at 24234-35.

Here, Kidfresh's use of the word "healthy" is not used to make a nutrient claim – implied or otherwise – and is not even directly about the specific products being challenged.  (Compl., ¶¶ 145.b., 146.b., 147.b., and 148.b.)  Rather, the word "healthy" is used in the context of a letter from Kidfresh's founder explaining his motivation behind starting the company and, at most, its use of the word healthy is analogous to stating something along the lines of "eat lots of fruits and vegetables for a healthy diet."  (*See id.*)  Indeed, to the extent the word "healthy" in this statement could be interpreted as even remotely making a nutrition claim, it would be to tether the word "healthy" to the fact that Kidfresh products generally contain vegetables, grains, and proteins – it has nothing to do with fat one way or the other.  Therefore, pursuant to the FDA's own guidance on the matter, Kidfresh's generic use of the term "healthy" in describing its founder's subjective intentions in creating the company does not require that the challenged products have the nutrient profile required by Section 101.65(d).  As such, the premise for

16

Plaintiff's contention that this statement violates Section 343(r)(1) is wrong, so the claims premised upon it are preempted as well.

In sum, the only two statements Plaintiff alleges violated Section 343(r)(1) in actuality do not do so. Therefore, her claims premised on these statements are preempted pursuant to Section 343-1(a)(5). Moreover, because Plaintiff has not alleged any of the other statements she alleges misled her violate Section 343(r)(1), claims premised on these statements are preempted as well.

### C.    Many Of Plaintiff's Claims Fail Because They Are Premised On Non-Actionable Puffery

"Subjective claims about products, which cannot be proven either true or false" are considered to be non-actionable puffery. *See Time Warner Cable Inc. v. DIRECTV, Inc.*, 497 F. 3d. 144, 159-160 (2d Cir. 2007) (internal quotation marks omitted). Such statements are oftentimes made "in broad, vague, and/or commendatory language." *See id.* (internal quotation marks omitted). "Determining whether an alleged misrepresentation constitutes puffery is a question of law appropriate for resolution on a Rule 12(b)(6) motion to dismiss." *Fisher v. Monster Beverage Corp.*, 2013 WL 4804385, *12 (C.D. Cal. July 9, 2013).

Kidfresh respectfully submits that the Court should dismiss all of Plaintiff's claims premised on the below statements as they constitute non-actionable puffery given their subjective and vague nature:

- "Goodness for kids is what we are all about."   (Compl., ¶¶ 145.a., 146.a., 147a., and 148.a.)

- "At Kidfresh, we are just like you:  we want to have kids' meals without all these artificial ingredients that you can't even pronounce!  As a dad, I made it my mission to create more options for healthy and easy kids' meals – ones that children love to eat and

parents can trust.  So, with our chef and nutritionist, we created Kidfresh, a healthy twist on kids' favorite foods".  (*Id.*, ¶¶ 145.b., 146.b., 147.b., and 148.b.)

- "The one thing we're sneaky about?  Vegetables."  (*Id.*, ¶¶ 145.h., 146.g., 147.i., and 148.e.)

- "The kids will love it!"  (*Id.*, ¶¶ 145.c, 146.c., 147.c.)

- "Simply Nutritious." (*Id.*, ¶¶ 145.d., 146.d., 147.d., 148.e.)

- "PACKED WITH GOODNESS."  (*Id.*, ¶¶ 145.f., 146.e., 147.f., 148.d.)

- "Fresh-Frozen Goodness."  (*Id.*, ¶¶ 145.i., 146.h., 147.j.)

- "Don't worry, they won't even notice, they'll love it!"  (*Id.*, ¶ 148.c.)

*See*, *e.g.*, *Parent v. MillerCoors LLC*, 2015 WL 6455752, *8-*9 (S.D. Cal. Oct. 26, 2015) (finding statement that Blue Moon beer was "artfully crafted" constituted nonactionable puffery in dismissing California Unfair Competition Law ("UCL"), False Advertising Law ("FAL"), and Consumers Legal Remedies Act ("CLRA") claims premised on claim that defendant's representation mislead consumers into believing Blue Moon beer was a craft beer); *Viggiano v. Hansen Nat'l Corp.*, 944 F. Supp. 2d 877, 894-95 (C.D. Cal. 2013) (in dismissing breach of warranty claim premised on use of the term "premium soda," finding that term constituted non-actionable puffery because it was "general and lacks any context indicating the scope of what is being warranted"); *Fisher v. Monster Beverage Corp.*, 2013 WL 4804385, *1-*2, *13 (C.D. Cal. July 9, 2013) (finding representations in a carbohydrate-free energy drink such as "we hacked our carbohydrates and calories, transplanted the wicked buzz and dialed in the flavor," "[o]ur friends at the Rehab pool party in Vegas know all about recovering from a long night and together we came up with Monster Rehab Green Tea + Energy," and "hydrates like a sports drink" constitutes non-actionable puffery in lawsuit where plaintiff alleged the labeling was

18

misleading given the drink's caffeine content); *Serrano v. Cablevision Sys. Corp.*, 863 F. Supp. 2d 157, 167-68 (E.D.N.Y. 2012) (finding statements such as "High Speed Internet," "Faster Internet," "blazing fast speed," and "Optimum Online's lightning-fast Internet access takes the waiting out of the Web" constituted nonactionable puffery); *Anderson v. Bungee Int'l Mfg. Corp.*, 44 F. Supp. 2d 534, 541-42 (S.D. N.Y. 1999) (finding terms "premium quality" and "Made in the U.S.A." were non-actionable puffery to the extent they were used to claim goods were of superior quality).

> **D.    Plaintiff Cannot Bring Claims Under New York General Business Law Sections 349 Or 350 Given None Of Her Alleged Interactions With Kidfresh Or The Challenged Products Involved New York**

Both Sections 349 and 350 of New York's General Business Law explicitly provide that they only pertain to conduct that occurs "in this state." *See* N.Y. Gen. Bus. Law §§ 349(a), 350. As the Second Circuit recognized in *Cruz v. FXDirectDealer, LLC*, the New York Court of Appeals "appears to have interpreted the limiting phrase 'in this state' in Section 349(a) and 350 to require that 'the transaction in which the consumer is deceived . . . occur in New York.'" *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 122 (2d. Cir. 2013) (quoting *Goshen v. Mutual Life Ins. Co. of N.Y.*, 98 N.Y.2d 314, 324 and n.1 (2002)). The Second Circuit further explained that there currently is a split regarding whether courts should utilize "a 'transaction-based' test on the one hand, or, on the other hand, a test premised on where the victim is deceived, regardless of where the transaction occurs" to determine if conduct occurred in New York. *Id.* at 122. Ultimately, the Second Circuit utilized the transactions-based test and, in the context of that case, held that the transactions at issue were properly considered New York transactions because (1) the defendant was paid in New York; (2) the defendant refused to disburse funds from customer accounts until it received a form at its New York office; (3) the defendant required that all customer communications be sent to its New York office; (4) the relevant agreement specified

19

that New York law governed the dispute between the plaintiff and defendant; (5) the relevant agreement also required that any lawsuits regarding the relevant transactions would have to take place in New York.  *See id.* at 122-24.

Under either test, the Court should find Sections 349 and 350 do not apply to Plaintiff's purchases of the challenged Kidfresh products as all of these purchases occurred exclusively in California.  (*See* Compl., ¶¶ 6, 142-144.)  With respect to the "transactions-based" test utilized in *Cruz*, the Court should not find that Section 349 and 350 apply to the transactions at issue given every fact identified by *Cruz* in finding Sections 349 and 350 applied there is absent here. Specifically, (1) there are no allegations that Plaintiff paid Kidfresh in New York, which is unsurprising because Plaintiff never paid Kidfresh but rather paid Whole Foods or Target in California each time she bought a challenged product; (2) Kidfresh did not require Plaintiff to do anything with respect to New York in order to purchase the challenged products; (3) to the extent there were any communications between Plaintiff and Kidfresh, they occurred in a California Whole Foods or Target store; and (4) Plaintiff and Kidfresh do not even have a contractual relationship – let alone one that mandates New York law be applied to any disputes and that litigation between the two take place in New York.  *Compare id. with* ( Compl., ¶¶ 142-144.) Indeed, for this reason, courts that have applied *Cruz*'s transactions-based test in analogous circumstances have dismissed claims under Sections 349 and 350 because the transactions at issue could not properly be considered New York transactions.  *See*, *e.g.*, *Beautiful Home Textiles (USA), Inc. v. Burlington Coat Factory Warehouse Corp.*, 2014 WL 4054240, *11 (S.D. N.Y. Aug. 15, 2014) (dismissing Section 349 and 350 claims due to lack of sufficient nexus to New York where plaintiff purchased challenged products in California); *Mouzon v. Radiancy, Inc.*, 85 F. Supp. 3d 361, 374-77 (D.D.C. 2015) (in finding Section 349 and 350 were

inapplicable where plaintiffs did not reside in New York, buy the challenged products in New York, or observe the challenged advertising in New York even though the defendant was headquartered in New York and the challenged marketing was alleged to have "emanated" from New York).

With respect to the second test that *Cruz* did not utilize, Sections 349 and 350 would not apply to the transactions at issue given there is no dispute that Plaintiff was allegedly deceived in California.  (*See* Compl., ¶¶ 142-144.)

> **E.** **Plaintiff's Breach Of Express Warranty Claims Fail Because She Has Not Alleged That Any Of Kidfresh's Affirmative Representations On The Challenged Products' Labeling Were False**

"To state a claim under a theory of breach of an express warranty, [a plaintiff] must allege facts sufficient to show that [defendant] made affirmations of fact or promises that became part of the basis of the bargain between the parties."  *Cruz*, 2015 WL 3561536, *9 (citing Cal. Com. Code § 2313(1)).[4]  "A description of the goods at issue can create an express warranty so long as it was part of the basis of the bargain between the parties."  *Viggiano v. Hansen Nat'l Corp.*, 944 F. Supp. 2d 877, 893 (C.D. Cal. 2013) (citing to Cal. Com. Code § 2313(1)(b)).

The substance of this claim is duplicative of Plaintiff's tort causes of action, and fails for the same reason.  Specifically, here, to the extent Kidfresh made any express representations regarding the total and saturated fat content in its products, those statements were indisputably accurate, and statements that have nothing to do with total or saturated fat do not somehow morph those indisputably accurate statements into being false.  (*See* Compl., ¶¶ 40-44.) Therefore, these claims should be dismissed as well. *See, e.g.*, *Cruz*, 2015 WL 3561536, *9-*10 (dismissing breach of express warranty claim where plaintiff contended statement that the

---

[4] Although Plaintiff has alleged two different breach of express warranty causes of action, she herself would only be able to assert such a claim under California law as that is where she is a resident and is also the only place where she purchased the challenged Kidfresh products.  (Compl., ¶¶ 4, 6, 142-144.)

alcoholic product purchased was "light" was misleading given its high caloric content because the defendant had not made any representations regarding the product's caloric content other than what was accurately stated in the product label's nutrition facts); *Viggiano*, 944 F. Supp. 2d at 893-95 (dismissing breach of warranty claim where plaintiff alleged that phrase "all natural flavors" was wrong given presence of non-natural ingredients because court found there was a material distinction between the word "flavors" and "ingredients").

### F.   Plaintiff's Breach Of The Implied Warranty Of Merchantability Claim Fails As A Matter Of Law Because The Warranty Is Inapplicable As To Kidfresh, And, Even If It Was, Kidfresh Is Not Alleged To Have Breached It

"Unless excluded or modified [ ], a warranty that goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind."  Cal. Com. Code § 2314(1).  "'Consequently, a defendant's liability for an implied warranty does not depend upon any specific conduct or promise on its part, but instead turns upon whether the product is merchantable under the code.'"  *Viggiano*, 944 F. Supp. 2d at 896 (quoting *Hauter v. Zogarts*, 14 Cal. 3d 104, 117 (1975)) (internal brackets omitted).  Rather, in order for a plaintiff to state a plausible breach of implied warranty of merchantability claim, they "must show that the product 'did not possess even the most basic degree of fitness for ordinary use.'"  *Id.* (quoting *Mocek v. Alfa Leisure, Inc.*, 114 Cal. App. 4th 402, 406 (2003).  Moreover, under California law, "[p]rivity of contract is a prerequisite in California on a theory of breach of implied warranties of fitness and merchantability."  *See All West Elecs., Inc. v. M-B-W, Inc.*, 64 Cal. App. 4th 717, 725 (1998).  Further, although an exception to contractual privity exists on claims based on breach of an express warranty where a manufacturer's representations on a product allegedly are false, no such exception exists on claims of a breach of an implied warranty of merchantability.  *See Burr v. Sherwin Williams Co.*, 42 Cal. 2d 682, 695-96 (1954).

Pursuant to the above authorities, Plaintiff's breach of the implied warranty of merchantability claim fails for two reasons. First, there is no contractual privity between herself and Kidfresh, as she bought the products from either Whole Foods or Target – not Kidfresh. (*See* Compl., ¶¶ 142-144.) The second reason this claim fails is because she has failed to allege that Kidfresh's challenged products do "not possess even the most basic degree of fitness for ordinary use." Therefore, this claim should be dismissed for this independent reason as well. *See Viggiano*, 944 F. Supp. 2d at 896-97 (dismissing breach of implied warranty of merchantability claim regarding a soda drink where the plaintiff had "not allege[d] any facts suggesting that the soda is not merchantable or fit for use as a diet soft drink; he has not, for example, alleged that the beverage was not drinkable, that it was contaminated or contained foreign objects, etc.").

### G.   Plaintiff's Equitable Unjust Enrichment And Restitution Causes Of Action Fail Because They Are Derivative Of Her Other Non-Plausible Claims, And Are Improperly Duplicative To Boot

Plaintiff's equitable claims of unjust enrichment and restitution are duplicative of the other claims, and therefore fail for the same reasons. Moreover, even if the Court concluded any of the other claims were viable, it should still dismiss these claims because equitable claims exist for those unusual situations where a defendant has not committed a recognized tort or breach of contract but nevertheless received an improper windfall; they are not meant to serve as a catch-all term in which duplicative claims may be brought. *See Corsello v. Verizon New York, Inc.*, 18 N.Y.3d 777, 790-91 (2012) (dismissing unjust enrichment claim where it is duplicative to other legal claims alleged); *Del Greco v. CVS Corp.*, 337 F. Supp. 2d 475, 488-89 (S.D. N.Y. 2004) (dismissing restitution claim that was duplicative of legal contractual claim); *McKinniss*, 2007 WL , 4766525 *6 (C.D. Cal. Sept. 4, 2007) (dismissing equitable unjust enrichment claim under

California law that was duplicative to legal claims pleaded).  Here, at best, these claims are duplicative of Plaintiff's other claims.  As such, they should be dismissed.

## V.        CONCLUSION

For the reasons stated above, the Court should dismiss Plaintiff's Complaint with prejudice.

Date:  September 9, 2016                                        Respectfully submitted,


                                            */s/ Matthew R. Orr*
                                            Matthew R. Orr (CA Bar 211097)
                                              *Admitted Pro Hac Vice*
                                            Delavan J. Dickson, (CA Bar 270865)
                                              *Admitted Pro Hac Vice*
                                            Call & Jensen, APC
                                            610 Newport Center Drive, Suite 700
                                            Newport Beach, CA 92660
                                            Tel: (949) 717-3000; Fax: (949) 717-3100
                                            morr@calljensen.com
                                            ddickson@calljensen.com

                                            *Attorneys for Defendant MG Wellington, LLC, dba Kidfresh*

24

## CERTIFICATE OF SERVICE

**I hereby certify** that on September 9, 2016 I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

*/s/ Matthew R. Orr*
Matthew R. Orr

## SERVICE LIST

*KI Burke v. MG Wellington, LLC, et al.*
Civil Action No. 1:16-cv-02968 WHP

Jack Fitzgerald, Esq.
Thomas A. Canova, Esq.
The Law Office of Jack Fitzgerald, PC
Hillcrest Professional Building
3636 Fourth Avenue, Suite 202
San Diego, CA 92103
Tel: (619) 692-3840
Fax: (619) 362-9555
jack@jackfitzgeraldlaw.com
tom@jackfitzgeraldlaw.com

Paul K. Joseph, Esq.
The Law Office of Paul K. Joseph, PC
4125 W. Point Loma Blvd., Suite 206
San Diego, CA 92110
Tel: (619) 767-0356
Fax: (619) 331-2943
paul@pauljosephlaw.com